## ATLANTA SAVINGS BANK *v.* SPENCER.

1. Under the ruling made in the case of *Bank* v. *Dottenheim,* ante, 606, the transaction involved in the present case was infected with usury.
2. The record not showing that the lender was a savings bank which paid "interest to depositors and whose deposits were not subject to check," the transaction can not be upheld as being within the provisions of section 2388 et seq. of the Civil Code.
3. A provision in a special charter passed by the General Assembly creating a banking corporation, which authorizes the making by such bank of a contract which would, under the general law of this State regulating the

rate of interest, be usurious, is a special law within the meaning of sec-- tion 5732 of the Civil Code, and is therefore unconstitutional and void.

4. Where in a given case the undisputed evidence discloses a scheme or de- vice adopted by a lender of money, from which it is palpably apparent that no other purpose was in view than an attempt to obtain more than the lawful interest on the money loaned, it is not error for the judge to- refuse to submit to the jury the question as to whether there is usury in the transaction. If, however, there be doubt as to whether the transac- tion is a cover for usury or one bona fide entered into in the ordinary course of business, it should be left to a jury to determine from all the- facts and circumstances of the case whether it was a legitimate transac- tion or a mere device to evade the laws against usury.

5. An agency to obtain a loan of money certainly terminates when the- money is received by the borrower and all the papers which the trans- action calls for have been executed and delivered to the respective par- ties. It follows, therefore, that after such time the declarations of the person who acted as agent in obtaining the loan are not binding on the borrower.

6. When not otherwise directed by the debtor, payments made on a debt in- fected with usury will be applied first to the payment of the legal interest due at the date of the payment; and any balance remaining after such interest is discharged will go in reduction of the principal. A plea alleg- ing such payment may be properly filed to an action on the debt, not- withstanding more than twelve months have elapsed after the payment. before the plea is filed.

7. The defense of usury is good even against a bona fide holder of a nego- tiable promissory note, who acquired the same before its maturity.

8. The evidence authorized the verdict, and there was no error committed. by the trial judge which required the granting of a new trial.

Argued May 23, —Decided July 19, 1899.'

Complaint. Before Judge Berry. City court of Atlanta. November 12, 1898.

*Ellis, Wimbish & Ellis, Hall & Wimberly, Gray, Brown & Randolph* and *T. S. Mell,* for plaintiff.

*Glenn & Rountree* for defendant.

COBB, J. The Atlanta Savings Bank brought suit against Mrs. Spencer upon nine promissory notes, eight of them for the sum of $58.33 each, and one for the sum of $58.53. The notes were made payable to the Southern Exchange Bank from which the plaintiff alleged it had purchased them for value, before ma- turity, and without notice of any defect or defense. The defend- ant filed a plea in which she alleged that on July 30, 1892, she gave to the Southern Exchange Bank sixty promissory notes, each for the sum of $58.33, except the last one which was for

the sum of $58.53; one of the notes falling due on the first of each month commencing with September, 1892, and ending with August, 1897, that the consideration of the notes was $2,-500 loaned to the defendant by the Southern Exchange Bank, and the defendant has paid to the owners and holders of the notes above referred to a sum aggregating $2,974.83, which is made up of forty-seven different payments set forth in detail in the plea; that on October 16, 1896, the date of the last payment, the total amount of interest which the holder of the notes was entitled to receive was $453.85; that when on the date last mentioned a payment of $116.66 was made the balance of the principal remaining due was $93.49, and the accrued interest since the payment preceding that last mentioned was $2.19, and that the last payment overpaid the amount then due $20.98. The first thirty-three payments above referred to were made to the Southern Exchange Bank and the remaining fourteen payments were made to the plaintiff after it had received the notes. The prayer of the plea was for judgment against the plaintiff in favor of the defendant for the balance claimed to be due by her on account of the usury charged. The evidence at the trial was of a character tending to establish the truth of the defendant's plea. The jury under the charge of the court returned a verdict in favor of the defendant for $20.98. A motion for a new trial filed by the plaintiff being overruled, it excepted.

1. This case and the case of *Bank* v. *Dottenheim*, ante, 606, although argued at different times, have been considered together upon the briefs submitted in each. Under the ruling made in the latter case, the transaction involved in the present case was infected with usury.

2. The record not disclosing in terms that the Southern Exchange Bank was a savings bank which paid "interest to depositors and whose deposits were not subject to check," the transaction can not be upheld as being within the provisions of section 2388 et seq. of the Civil Code.

3. There was a provision in the charter of the Southern Exchange Bank, expressly authorizing it to calculate interest in advance and add the same to the principal of the debt, and

provide for the payment of the debt so calculated by install-
ments payable monthly or at such other periods as might be
agreed on.   Acts 1890–91, vol. 2, p. 82.   The constitution of
this State declares that "Laws of a general nature shall have
uniform operation throughout the State, and no special law
shall be enacted in any case for which provision has been
made by an existing general law."   Civil Code, § 5732.   The
law of this State regulating the rate of interest and declaring
what transactions shall be usurious is undoubtedly a general
law within the meaning of the constitution; and a law which
allows one person, whether that person be natural or artificial,
to charge a rate of interest greater than that authorized by
this general law would certainly be a special law within the
meaning of the constitution, and would therefore be inopera-
tive and void.   Since the adoption of the present constitution
this court has uniformly held that laws of this character were
special laws within the meaning of the constitution, and were
inoperative whenever there was an existing general law upon
the subject.   A law which deals only with a particular individual
or particular corporation or a particular locality, whether muni-
cipal or county, is a special law within the meaning of this
clause of the constitution.   *Mayo* v. *Renfroe*, 66   *Ga.*   408;
*County of Dougherty* v. *Boyt*, 71   *Ga.* 484; *Elliott* v. *Gammon*,
76 *Ga.* 766; *Houston County* v. *Killen*, 76 *Ga.* 826; *Adair* v.
*Ellis*, 83 *Ga.* 464; *Lorentz & Rittler* v. *Alexander*, 87 *Ga.* 444;
*Crabb* v. *State*, 88 *Ga.* 584; *Smith* v. *State*, 90 *Ga.* 133.   It is
said, however, that it is abundantly established by authority
that when the General Assembly lends its express sanction to
a particular transaction, such a transaction is withdrawn from
the operation of a statute under the terms of which the trans-
action would be usurious.   To support this contention the fol-
lowing authorities are cited :   *Loan Assn.* v. *Richards*, 21 *Ga.*
592; Loan Assn. *v.* Robinson, 69 Ala. 413; Loan Assn. *v.* Lake,
69 Ala. 456; Pfeister *v.* Bldg. Assn., 19 W. Va. 676; Stiles'
Appeal, 95 Pa. St. 122; Bates *v.* Loan Assn., 42 Ohio St. 655;
Danville *v.* Pace, 25 Grattan, 1 ; Smoot *v.* Loan Assn. (Va.),
29 S. E. 746; Bldg. Assn. *v.* Allen, 28 Conn. 97 ; Welch *v.*
Wadsworth, 30 Conn. 149; Holmes *v.* Smythe, 100 Ill. 413;

Freeman *v.* Bldg. Assn., 114 Ill. 182; Winget *v.* Bldg. Assn., 128 Ill. 67. In none of the cases cited did the court have under consideration the question which we have dealt with above. In the Illinois cases the court had for determination the question whether an act applying to all loan associations in the State, which permitted transactions which, but for the act, would be declared usurious, was a violation of a provision in the State constitution, declaring that the General Assembly shall not pass local or special laws "regulating the rate of interest on money." It was held that the act was a general law and not local or special in its character, being applicable to all citizens of the State who chose to bring themselves within the operation of the law. A similar conclusion was reached by us in the *Dottenheim* case, supra. We have not had our attention directed to any case where it has been held that under a constitutional provision similar to ours a special act would be valid which authorized a particular person or corporation to engage in a transaction which would be usurious under the terms of a general law of force when such special act was passed.

4. There was no error in refusing to submit to the jury the question as to whether the transaction was infected with usury. The evidence disclosed such a palpable device to obtain more than the legal rate of interest that it was perfectly proper for the judge to charge the jury that under the state of facts proved there was usury in the transaction. See *Bank* v. *Dottenheim*, ante, 606, where a similar transaction was involved. In no case where it is clear from the evidence that an attempt has been made to violate the laws against usury has it ever been held that it was a question for the jury to determine whether there was any usury in the transaction. In other words, where the transaction disclosed by the evidence is per se usurious, the court is authorized to charge the jury to that effect. If, however, there be doubt as to whether the transaction is a cover for usury or a perfectly fair one authorized by law, then it is a question for the jury to determine, from all the facts and circumstances of the case, whether the transaction disclosed is one bona fide in the ordinary course of business, free from the taint of usury, or whether it is a mere cloak and device, under the

forms of an ordinary business transaction, to obtain more than the legal rate of interest. See, in this connection, *White* v. *Guilmartin*, 83 *Ga.* 640, and cases cited; *Mackenzie* v. *Flannery*, 90 *Ga.* 590; Cockle *v.* Flack, 93 U. S. 344.

5. The plaintiff offered evidence tending to show that the defendant's husband had stated to the cashier of the plaintiff, at the time it purchased the notes sued on, that they were "all right," and that the bank could purchase them with safety; it being contended that the husband of the defendant was her agent and that she was bound by his declarations. The purpose of the testimony was to bring the case within the rule laid down in *Henry* v. *McAllister*, 99 *Ga.* 557, where it was held that one who makes a usurious note and gives a deed to secure it, usury not appearing upon the face of the papers, and who induces another to purchase the note by representing that it and the deed given to secure it are "valid" and "all right," is estopped from setting up usury in the transaction against such person, if he purchased in good faith and in ignorance of the usury. The court rejected the evidence on the ground that agency was not proved. Of course agency can not be proved by the mere declarations of the agent, and this well-settled rule was not questioned in the present case; but it was contended that as the evidence showed that the defendant's husband was her agent to negotiate the original loan, the agency thus established was presumed to continue, and that therefore he was authorized to speak for her whenever the matter of the loan was under consideration. We do not think this position is tenable. Conceding that the evidence was of a character to show that the defendant's husband was her agent in negotiating the loan, there is nothing to indicate that the agency was to extend further than this single transaction, and there being nothing whatever in the case to show any agency at the time of the alleged declarations by Mr. Spencer, except possibly his own statement, there was no error in rejecting the evidence.

6. One of the errors assigned is, that the judge "refused to charge the jury on the subject of the statute of limitations as applied to the notes in controversy; the plaintiff contending that whereas the parties to the contract had agreed to separate

it into sixty separate notes or parts, and, according to the contention of the defendant and the instruction given by the court to the jury, that the voluntary payment thereof by the defendant constituted a separate and distinct payment of usury if the contract was usurious, and that therefore the right of the defendant to sue and recover back a part of the first or any subsequent note would have been clear if such suit had been brought within twelve months, and that, having failed to bring such suit, the statute of limitations ran against such payment, and the court should have instructed the jury so to find, the issue being made distinct in the pleadings." There was no error in the failure of the court so to charge. It is provided in section 2889 of the Civil Code that the amount of any forfeiture on account of usury may be pleaded as a set-off in any action for the recovery of the principal sum loaned or advanced by the defendant in the ·action; and in section 2891 it is provided that no plea or suit for the recovery of such forfeiture shall be barred by lapse of time shorter than one year. In *Cheapstead* v. *Frank*, 71 *Ga.* 549, it was held, that where notes were given for a loan at usurious interest, and various payments were made, without direction as to how they should be appropriated, and under no express contract to keep down interest or to satisfy the usury charged, there was no error in refusing to charge to the effect that such payments were made to satisfy the usury, and that as more than six months had elapsed before this defense was set up, a claim that the note was usurious was barred by the statute of limitations. In *Lilly* v. *De-Laperiere*, 76 *Ga.* 348, when the court had under consideration the law now embraced in section 2891 of the Civil Code, it was held that a plea of payment of the character of that filed in the present case was not such a plea as is contemplated by the section above quoted, and required to be filed within twelve months from the time of the payment. See also *Haskins* v. *Bank*, 100 *Ga.* 216, and cases cited. In the present case there being no express agreement that the payments made were to be applied otherwise than in the manner the law would direct, whenever one of the notes was paid the payment discharged the interest then due on the entire debt, and any excess went in discharge

· of the principal of the debt.    See in this connection Civil Code, § 2883; *Haskins* v. *Bank*, supra.    Such being the case, when a point was reached where the amount of the payments made was equal to the principal and legal interest on the sum borrowed, the debt was thereby discharged, and any notes then remaining unpaid were simply notes the consideration of which was the usury involved in the transaction.

7.    Even a bona fide purchaser for value before maturity of a negotiable instrument is not authorized to enforce the collection of any usury that is involved in the transaction.    *Angier* v. *Smith*, 101 *Ga.* 844, and cases cited.    When the Southern Exchange Bank transferred the notes, a portion of which are now sued on, to the plaintiff, it acquired the right under this transfer to collect only so much of the principal as was then due, all sums paid to the Southern Exchange Bank in excess of the legal rate of interest being applied in the manner above referred to in discharge of the legal interest and proportionate part of the principal, and the extent of the right of recovery of the plaintiff at any time was the balance of the principal due at the time of the transfer and any legal interest which had accrued thereon.

8.    The verdict in favor of the defendant for the amount paid by her in excess of the principal and legal interest on the debt was authorized by the evidence, and there was no error committed by the trial judge which would require the granting of a new trial.    If there was any error committed by him in stating the rule as to how partial payments should be made, it was harmless, because in the present case at no time did the interest due exceed the payment made.

*Judgment affirmed.    All the Justices concurring.*