NEWCOMB *v.* NISKEY'S LAKE INC. *et al.*

No. 13182.   July 10, 1940.

*H. C. Holbrook*, for plaintiff.

*Jones, Powers & Williams*, for defendants.

ATKINSON, Presiding Justice. ■ Reference is to the first question propounded by the Court of Appeals. It is declared in the Code: "The legal rate of interest shall be seven per centum per annum, where the rate per centum is not named in the contract, and any higher rate must be specified in writing, but in no event shall any person, company, or corporation reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." § 57-101. "Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." § 57-102. Usury being an excess of legal interest it is a violation of the Code, § 57-101, to reserve and take usury or to contract to reserve and take usury. The foregoing sections are to be considered in connection with § 57-112, which declares: "Any person, company, or corporation violating the provisions of section 57-101 shall forfeit the entire interest so charged or taken, or contracted to be reserved, charged or taken. No further penalty or forfeiture shall be occasioned, suffered, or allowed." This was codified from the act of 1916 (Ga. L. 1916, p. 48). Exaction of usury is odious, illegal, and immoral. *Bailey v. Lumpkin*, 1 *Ga.* 392, 406; *Laramore v. Bank of Americus*, 69 *Ga.* 722; *Angier v. Smith*, 101 *Ga.* 844 (28 S. E. 167); *Atlanta Savings Bank v. Spencer*, 107 *Ga.* 629, 636 (33 S. E. 878); *Union Savings Bank & Trust Co. v. Dottenheim*, 107 *Ga.* 606 (34 S. E. 217). And because it is so, usury has been held to void all interest

reserved or taken or contracted to be reserved or taken in a negotiable instrument, even in the hands of a bona fide purchaser for value without notice. *Bank of Lumpkin v. Farmers State Bank,* 161 *Ga.* 801 (132 S. E. 221) ; *Stewart* v. *Miller,* 161 *Ga.* 919 (132 S. E. 535, 45 A. L. R. 559), and see remarks of Russell, C. J., in the dissenting opinion, pp. 933, 934; *Lankford* v. *Holton,* 187 *Ga.* 94, 99-100 (200 S. E. 243) ; In re Hotel Equipment Co., 297 Fed. 842; 66 C. J. 344, § 358, notes 17, 18. Usury, being of such character, though not expressly mentioned by that name, comes within the second exception provided in the Code of 1910, § 4286 (omitted from the Code of 1933), which declares: "The bona fide holder for value of a bill, draft, or promissory note, or other negotiable instrument, who receives the same before it is due, and without notice of any defect or defense, shall be protected from any defenses set up by the maker, acceptor, or indorser, except the following: 1. Non est factum. 2. Gambling, or immoral and illegal consideration. 3. Fraud in its procurement." With the statutes existing and construed by this court as above mentioned there came the act approved August 18, 1924 (Ga. L. 1924, p. 126), known as the negotiable-instruments law, Code of 1933, §§ 14-101 through 14-9902. Pertinent parts of that act will now be mentioned. In § 14-507, set forth and annotated also in 5 Uniform Laws Annotated, Negotiable·Instruments Act (Edward Thompson Company), 257, § 57, note J, it is declared: "A holder in due course holds the instrument free from any defect of title to prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." This does not define the term "holder in due course." By resort to § 14-502 the term is thus defined: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." In § 14-503 it is declared that "the holder is not deemed a holder in due course" where the instrument is payable on demand and "is

negotiated an unreasonable length of time after its issue." These two sections are to be considered together. They speak of *defenses* generally that may be urged to negotiable instruments as against "holders in due course" as defined above. They do not nor does the act of 1924 in other sections mention usury, or its illegal and immoral attributes, or § 4286 of the Code of 1910, or the act of 1916 (Code, § 57-112). Those two sections remain of force, unless repealed in a manner provided by law. The mere omission to include § 4286 of the Code of 1910 in the Code of 1933 will not operate to repeal it. *Georgia Railroad Co.* v. *Wright,* 124 *Ga.* 596 (53 S. E. 251), *Orr* v. *Riley,* 160 *Ga.* 480 (128 S. E. 669). Neither in the circumstances should the negotiable-instruments act of 1924 and its inclusion in the Code of 1933 be construed as repealing it or the act of 1916 by implication, on the ground of repugnancy. Such a construction would involve more, as in the instant case, than denial of a *defense,* going to disallowance of excessive interest. It would go to the affirmative matter of *forfeiture of earned interest allowed by the statute.* Section 14-507 does not purport to do either, and does not reflect legislative intent to repeal the old law as embodied in the Code of 1910, § 4286, or the act of 1916, with such degree of certainty as would bring about repeal by implication. The act of 1916 (Code of 1933, § 57-112) must be considered in connection with the related unrepealed § 4286 of the Code of 1910. The one *expressly* allows defenses based on immoral and illegal consideration against an innocent holder for value, and the other provides for forfeiture of interest as against such holder based on usury, which, according to the decisions of this court hereinabove cited, is illegal and immoral per se. When so considered, and giving effect to them since passage of the negotiable-instruments law of 1924 in this State, the exaction of usury in a negotiable instrument will cause a forfeiture of the entire interest contracted to be taken, as against a holder in due course as defined in the negotiable-instruments act as set forth in the Code, §§ 14-502, 14-507. This does not comport with certain dicta in *Peoples Loan & Finance Corporation* v. *Latimer,* 183 *Ga.* 809, 812 (189 S. E. 899), which decision was followed in *Southern Security Co.* v. *American Discount Co.,* 184 *Ga.* 82 (190 S. E. 350). But those cases did not involve usury, or any defense founded on illegal and immoral consideration. In this respect they

differ from the instant case, and are not controlling. See generally, on the subject discussed, Artrip v. Peters, 114 W. Va. 819 (174 S. E. 524); Eskridge v. Thomas, 79 W. Va. 322 (91 S. E. 7, L. R. A. 1918C, 769). Different courts have taken different views. See cases cited in note in 5 A. L. R. 1444, 1447, to Sabine v. Paine, 223 N. Y. 401 (119 N. E. 849); Brannan's Negotiable Instruments Law (5th ed.), 554 et seq., § 55; Dallas Trust & Savings Bank v. Brashear (Tex. Civ. App.), 65 S. W. 2d, 288; Perry Savings Bank v. Fitzgerald, 165 Iowa, 446 (149 N. W. 497); Wilinsky v. Schacher, 216 App. Div. 734 (214 N. Y. Supp. 252); McCormick v. Fallier, 223 Ala. 80 (134 So. 471); Hall v. Mortgage Security Corporation, 119 W. Va. 140 (192 S. E. 145); Whitaker v. Smith, 255 Ky. 339 (73 S. W. 2d, 1105); Boston Mutual Life Insurance Co. v. Newton, 174 Ark. 547 (297 S. W. 1035); Whipp v. Glueck, 58 Fed. 2d, 523; Allen v. Grenada Bank, 155 Miss. 91 (124 So. 69). Recent Statutory Changes in the Law of Negotiable Instruments in Georgia (pamphlet, February 25, 1933), 6, by Professor Thomas F. Green Jr. The first question propounded by the Court of Appeals is answered in the negative.

■ As to the second question propounded: Inasmuch as usury works forfeiture of all interest under the law both before and since the negotiable-instruments act of 1924, as ruled above, it is immaterial in the instant case that the original bonds mentioned below were issued before the effective date of the act of 1924, and the renewal bonds issued after that date. Under the Code, §§ 57-101, 57-102, defining lawful interest and usury, a charge by the lender as "a commission" of $8000, deducted from a loan of $80,000 evidenced by bonds of the borrower, which carry the full rate of lawful interest (eight per cent. per annum) is usury. A stipulation in the bonds to pay in addition to lawful interest a percentage of Federal income taxes that might be imposed upon the bonds is also usurious. A further stipulation that the "bonds are subject to redemption, in whole or in part, on any interest-payment date, at a premium of two per cent. on the face of the bond and accrued interest," did not relieve the bonds of their usurious character. In *Archer* v. *McCray, 59 Ga. 546 (2)*, it was said: "Where the original transaction was usurious, the usury infects all the securities given in renewal for the same debt, however varied in form and amount." The same principle was stated

in *McGee* v. *Long,* 83 *Ga.* 156 (9 S. E. 1107). It follows that the facts set forth in the second question propounded by the Court of Appeals do not require an answer different from that given to the first question.

■ As to the third question: The indorsement, "For value received, we hereby guarantee the payment of the within bond, principal and interest, according to the tenor and effect thereof," refers to indorsements entered on the bonds by officers of the obligor before negotiation of the original bonds, which were subsequently renewed with the same indorsements. In *Guaranty Mortgage Co.* v. *National Life Insurance Co.,* 55 *Ga. App.* 104 (189 S. E. 603), which on writ of certiorari was affirmed by the Supreme Court (184 *Ga.* 644, 192 S. E. 298), on the ground that the Court of Appeals had decided correctly, it was held that the contract of indorsement was one of surety. As the indorsers were sureties, they were not bound to pay interest the obligor was not bound to pay because of forfeiture on account of usury. Consequently the indorser could plead usury as ground of forfeiture of interest, as against the holder. The third question is answered in the affirmative. The case differs from *Walker* v. *Hillyer,* 124 *Ga.* 857 (53 S. E. 313), where it was held: "The maker of a note tainted with usury, who after its maturity induces another to purchase it, representing that there is a stated amount due, and promising to pay that sum at a later date, is, when it appears that the purchaser acted in good faith, and there is no evidence showing that he knew of the usury, estopped from pleading that there was usury in the original transaction."

■ The fourth question does not call for answer, as it was conditioned on a negative answer to the third question.

*Questions answered. All the Justices concur.*