BOSTON MUTUAL LIFE INSURANCE COMPANY v. NEWTON.

Opinion delivered June 27, 1927.

1. USURY—WHAT LAW GOVERNS.—A loan transaction, in which notes for commission of the lender were alleged to make the loan usurious, *held* governed by the laws of Oklahoma, where the application for loan was made to an agent of the Oklahoma corporation in Arkansas, and the notes were dated in Oklahoma, payable to an Oklahoma corporation in that State.

2. USURY—RATE OF INTEREST.—A loan governed by the laws of Oklahoma is not usurious where the interest plus commissions did not exceed 10 per cent. interest for the term of the loan.

3. USURY—FORFEITURE.—The laws of Oklahoma do not declare a usurious contract void, but merely declare that double the amount of the interest charged, reserved or paid shall be forfeited, and that this may be recovered upon a separate suit, or upon a counterclaim or a set-off for the money loaned.

4. USURY—INNOCENT PURCHASER OF NOTE.—Under Comp. St. Okla., 1921, § 5100, making the exaction of more than 10 per cent. interest usury, and providing for the forfeiture of double the amount of interest charged in such case, the forfeiture does not extend to the purchaser of the note or evidence of debt reserving the usurious interest in good faith before maturity.

5. BILLS AND NOTES—INNOCENT PURCHASER.—The fact that an instrument is based on a transaction prohibited by a statute does not defeat the right of an innocent purchaser to recover on it, unless the statute makes the instrument absolutely void.

Appeal from Arkansas Chancery Court, Northern District; *H. R. Lucas*, Chancellor; reversed.

STATEMENT BY THE COURT.

A. A. Newton and wife applied to an agent at Stuttgart of the Dickinson-Reed-Randerson Company, an Oklahoma corporation authorized to do business in this

State, for a loan of $4,000, and executed a contract appointing said company their agent to procure the loan for 10 years at 7 per. cent. The loan was made or procured.

The note for the loan is dated Oklahoma City, Oklahoma, January 25, 1921, payable on the first day of February, 1931, to the order of the Dickinson-Reed-Randerson Company, Oklahoma City, Oklahoma, in the sum of $4,000, at the Hanover National Bank of New York City, with interest at 7 per cent., payable annually, signed by A. A. Newton and Jerusha Newton, with interest coupons of the same date, each for one year's interest at 7 per cent., $280. A first mortgage was given to secure the payment of the $4,000 note to said company of Oklahoma City, acknowledged by the Newtons on the 7th day of January, 1921, and recorded February 14, 1921.

Newton and wife also executed, on the same day, three notes for $400 each, payable to the order of the said company, at the Farmers' National Bank of Oklahoma City, due one, two and three years from date, with interest from maturity at 10 per cent. per annum, and secured same by a second mortgage on the same land, which provided that all of the notes should become due on the failure to pay either.

The Dickinson-Reed-Randerson Company, hereafter called the brokerage company, brought this suit to enforce payment of the two last $400 commission notes, the first having been paid.

The Newtons admitted the execution of the notes, alleged the facts relative to the making of the loan, that it was one transaction, which was void for usury under the laws of Arkansas, where it alleged the contract was made, and asked the penalty provided by the law of Oklahoma. if it should be held to be an Oklahoma contract; alleged further that the Boston Mutual Life Insurance Company, a Massachusetts corporation, held the loan note, with the mortgage security, and prayed that it be made a party, and its note and mortgage be canceled as a cloud upon their title; that, if the transaction was

held to be governed by the Oklahoma laws, they recover $8,000, double the interest to be paid, and $1,500 attorney's fees.

The brokerage company filed a reply to the cross-complaint, denying that the $400 notes were given as interest, and all other allegations of the cross-complaint, and alleged that they were in payment of a commission charged for procuring the $4,000 loan; that it did not and never had lent funds of its own in Arkansas or anywhere else; "that it procured money for those who apply to it therefor from persons and banks having same to loan, and that it receives as its compensation for its services therein a commission from the borrower"; alleged the procuring of the loan, under the appointment of the Newtons, as already set out, and that it assigned the loan note and mortgage to the Boston Mutual Life Insurance Company, which company furnished the money loaned, which was paid over by it to the Newtons; that the loan note and mortgage was made direct to the plaintiff, the brokerage company, and by it assigned to the Boston Mutual Life Insurance Company, and for its services in procuring said loan it charged the defendant, and they agreed to pay, a commission of $1,200, evidenced by the three notes of $400 each.

The Boston Mutual Life Insurance Company, hereafter called the insurance company, appellant, replied, denying, on information and belief, that the notes and mortgages were executed under the circumstances alleged by defendants' cross-complaint, and denied all other allegations therein; denied specifically that its mortgage and note was usurious; denied any knowledge of the execution of the three $400 notes to the brokerage company until the answer and cross-complaint was filed herein; alleged that it paid over the $4,000 without any knowledge of any kind whatever of any defense thereto; that it was a stranger to the transaction between the brokerage company and the Newtons, and that its loan was a separate transaction, and in no wise connected with the commission notes.

Amendment was filed on June 6, 1923, to the complaint, alleging that A. A. Newton was adjudged incompetent on November 18, 1923, and prayed that his guardians, naming them, be made parties to the suit.

The guardians answered the amended complaint, adopted the cross-complaint already filed, alleged that Newton was incompetent at and prior to the time he executed the notes and mortgages sued on, and unable to comprehend the transaction.

Other amendments to the complaint were filed; alleging the death of A. A. Newton and his wife, intestate, the names of their children and heirs, with prayer that they be made parties, which was done.

The brokerage company, plaintiff, and the insurance company, replied to the cross-complaint of the guardians, denying all the allegations thereof and that Newton was incompetent, and alleged that he was capable of transacting business at the time of the execution of the notes.

The undisputed testimony shows that the insurance company had no knowledge or information about the execution of any commission notes to the brokerage company at the time of the execution of the note and mortgage for the loan, which it in fact made, advancing the money upon presentation of the application authorizing the brokerage company to procure the loan with the note and mortgage securing it.

The chancellor found A. A. Newton, the mortgagor, was of sound mind and competent to contract when the papers were executed; that the notes and mortgages constituted one transaction or contract, governed by the laws of Oklahoma, and that the contract was usurious; that the brokerage company was not entitled to recover, its suit being based upon interest notes given in pursuance of a usurious contract, and dismissed its complaint. That the defendants should recover from the said brokerage company on the cross-complaint $800, being twice the amount of the one $400 commission note paid to it. Found further that $560 had been paid to the insurance com-

pany by defendants, and that they should recover of the insurance company on the cross-complaint double that amount and double the amount paid the brokerage company, $1,920 in all, which should be deducted from the principal indebtedness, $4,000, and decreed accordingly, foreclosing the mortgage for the payment of the balance of $2,080 held to be due the insurance company, with 6 per cent. interest from the date of the decree, from which this appeal is prosecuted, and a cross-appeal also.

*M. F. Elms* and *George A. McConnell,* for appellant.

*George C. Lewis,* for appellee.

KIRBY, J., (after stating the facts). It is urged for reversal on the cross-appeal that the chancellor's finding that A. A. Newton was of sound mind and competent to contract at the time of the execution of the application, notes and mortgages, in borrowing the money, is not supported by the testimony, but we find no merit in the contention. No useful purpose would be served by setting out the testimony or arguing at length about it, and it will suffice to say that, after a careful consideration of it all, we cannot say the finding is not supported by the preponderance of the evidence.

The chancellor also correctly held the transaction an Oklahoma contract governed by the laws of that State, but erred in the construction and application of its laws. *Dupree* v. *Virgil R. Coss Mortgage Co.,* 167 Ark. 18, 267 S. W. 586, 1119; *Virgil R. Coss Mtg. Co.* v. *Jordan,* 167 Ark. 36, 267 S. W. 590, and *Smith* v. *Brokaw, post* p. 609.

This case is ruled by the opinion in *Smith* v. *Brokaw* of this date. Under the laws of Oklahoma a contract is not usurious where the whole amount of the interest charged or reserved for the whole term or period of the loan does not exceed the rate of 10 per cent. upon the amount of the loan. The 7 per cent. interest reserved in the principal note for $4,000 amounts to $280 yearly, or $2,800 for the term of the loan, and the three $400 commission notes, amounting to $1,200, which is but 3 per cent. of the amount of the principal note for the term,

showing that, although the rate seems excessive computed from the maturity of the commission notes, which is only a part of the time the loan had to run, it is not excessive nor more than 10 per cent., the rate allowed to be charged under the Oklahoma law, when the payments are spread out over the entire time the contract, if performed, had to run.

Moreover, the laws of Oklahoma do not declare a contract void for usury upon the exaction of the payment of more than 10 per cent. interest for a loan of money, but only that double the amount of the interest charged, reserved or paid shall be forfeited and may be recovered upon a separate suit brought, or upon a counter-claim or set-off pleaded in the suit for collection of the money loaned.

Such forfeiture, however, does not extend to a *bona fide* purchaser before maturity of the note or evidences of debt in which usurious interest is reserved. Section 5100, Okla. Compiled Statutes, 1921; *Stockyards State Bank* v. *Johnston*, 152 Pac. 585, 52 Okla. 32; *Daniels* v. *Bunch*, 223 Pac. 841, 98 Okla. 47.

In *City Nat. Bank* v. *DeBaum*, 166 Ark. 18, 265 S. W. 648, our court said (quoting syllabus): "The right of an innocent purchaser to recover on a negotiable instrument cannot be defeated merely because it is based on an illegal transaction, or one prohibited by law, unless the statute makes such instrument absolutely void."

It follows that there will be an affirmance on the cross-appeal, but the decree will be reversed for the error in holding the contract usurious, and the cause remanded with directions to enter a decree in favor of the respective parties for the amounts due on the notes and the foreclosure of the mortgages for the payment, with priority payment of the amount due the insurance company out of the proceeds of the sale of the lands, and further proceedings in accordance with the principles of equity and not inconsistent with this opinion. It is so ordered.